**Bert McDONALD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 306–88.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 11, 1989.

Kurt M. Noell, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., and Michael J. Sandlin & Christian E. Bryan, Asst. Dist. Attys., Tyler, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

BERCHELMANN, Judge.

Appellant, Bert McDonald, was convicted of possession of cocaine and sentenced to twenty-five years' imprisonment. On direct appeal, the Court of Appeals for the Twelfth Supreme Judicial District reversed appellant's conviction, based upon the State's warrantless search of appellant's liquor establishment. *McDonald v. State*, 768 S.W.2d 313 (Tex.App.—Tyler, 1988). We granted the State's petition for discretionary review to determine whether the Court of Appeals erred in reaching that conclusion. We will reverse the Court of Appeals decision and remand this cause to that Court.

A brief recitation of the facts is necessary. Appellant was the owner and operator of the New Experience Club, an establishment licensed to sell alcoholic beverages. The record reflects that the police received a telephone tip from an informant who stated that appellant was selling cocaine from behind the bar at the New Experience Club. The informant, who stated she just left the club, told the police that appellant had cocaine under the cash register at the club, among other places. The police knew the informant to be credible and reliable. Based on information that there was a violation of the Texas Alcoholic Beverage Code ("T.A.B.C."), which prohibits possession of narcotics on a licensed premises,[1] the police proceeded to appellant's club. The police, who arrived at the club within thirty minutes of receiving the phone call, conducted a warrantless search of the area behind the bar and found a matchbox of cocaine in the handle of a trash can located directly under the cash register. When the police first arrived, appellant, the only person behind the bar, was standing six to ten inches from the location where the cocaine was ultimately found.

The State urges, as it did on direct appeal, that the search of appellant's establishment was permissible under the T.A.B.C. which authorizes administrative inspections on premises that sell alcoholic beverages:

> By accepting a license or permit, the holder consents that the commission, an authorized representative or a peace officer may enter the premises at any time to conduct an investigation or inspect the premises for the purpose of performing any duty imposed by this Code.

T.A.B.C. § 101.04

The Court of Appeals rejected the State's argument and held that the search of appellant was impermissible under the rationale of this Court's recent opinion in *Crosby v. State*, 750 S.W.2d 768 (Tex.Cr.App. 1987).

The facts in *Crosby*, however, are quite different from the fact scenario in the case at bar. In *Crosby*, supra, a nationally acclaimed musician contracted to perform in a Dallas night club. Pursuant to the contract, the night club provided Crosby with a private dressing room. The entrance to the room was secluded from the general public, and was covered with a drawn, opaque curtain. Crosby's personal guard was posted outside the dressing room to prohibit anyone from entering. A Dallas police officer, who testified he was "curious," pushed Crosby's sentry aside and entered the dressing room. Crosby was subsequently arrested for possession of cocaine and a firearm.

We reversed Crosby's conviction for unlawful possession of a controlled substance and unlawfully carrying a handgun in a tavern, holding that the search of the pri-

---

1. See T.A.B.C. § 104.01(9).

vate dressing room violated the Fourth and Fourteenth Amendments to the Federal Constitution and Art. I, Sec. 9 of the Texas Constitution. The Court's opinion, written by Judge Duncan, noted that Crosby had an expectation of privacy in the dressing room, and that Crosby's privacy expectation was one recognized by society as being reasonable. In so holding, the Court determined that the officer's actions were "not related to detecting a violation of the Texas Alcoholic Beverage Code," but rather were a mere subterfuge "to conduct a[n] exploratory search." *Crosby*, 750 S.W.2d at 777. Therefore, under the facts of the case, Crosby's reasonable expectation of privacy was not overridden by the T.A.B.C. inspection provisions.[2]

While *Crosby*, supra, stands for the proposition that someone with a legitimate expectation of privacy is protected by the Fourth Amendment and Article I, § 9, we reiterated in *Crosby* that "the liquor industry is a closely regulated industry and as to the owner of the commercial premises a warrant is not a condition precedent to [a] valid search conducted within [the T.A.B.C.]." *Crosby*, 750 S.W.2d at 780 (emphasis added).

■ Today, we are asked to determine the validity of the search of appellant's bar, a licensee under the T.A.B.C. We hold that the search of appellant's bar was a valid warrantless search pursuant to the administrative search provision found in T.A.B.C. § 101.04.

In reaching this determination, we first look to the T.A.B.C., which provides for warrantless searches of establishments serving alcoholic beverages. The Supreme Court recently enunciated three criteria for measuring the constitutional validity of statutes which reduce expectations of privacy by providing for warrantless searches of closely regulated businesses. See, *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). First, there must be a substantial government interest

that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be necessary to further the regulatory scheme. Last, the inspection program, in terms of certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. The Supreme Court held that for a statute to meet this third criteria, it must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspection undertaken for specific purposes," and it must limit the discretion of inspectors in terms of "time, place and scope." *Burger*, 107 S.Ct. at 2644. A statute which meets this criteria provides a constitutionally valid exception to a warrant requirement for administrative inspections of closely regulated businesses.

■ We have previously held that T.A.B.C. § 101.04 meets the first two criteria set forth in *Burger*, supra, because a substantial governmental interest is advanced by the inspection provision, and because the inspections are necessary to regulation of the industry. *Crosby*, 750 S.W.2d at 775. Turning to the third criteria, we must determine whether, pursuant to the facts of this case, the regulatory statute provided an "adequate substitute for a warrant." *Burger*, 107 S.Ct. at 2644. T.A.B.C. § 101.04 grants to police officers, and other state agents, authority to enter a licensed premises at any time and to conduct an investigation or inspect the premises for performing any duty imposed under the code. The duties imposed under the code are set forth in T.A.B.C. § 101.07:

all peace officers in the state … shall enforce the provisions of this code and cooperate with and assist the commission in detecting violations and apprehending offenders.

In accordance with the third criteria enunciated in *Burger*, supra, the T.A.B.C. limits

---

2. In a concurring opinion authored by Judge Miller, three judges of this Court disagreed with the Court's implicit holding that the search would have been permissible had the police

officer entered the dressing room in furtherance of the regulatory scheme set forth in the T.A.B.C. *Crosby*, 750 S.W.2d at 781 (Miller, J. concurring, joined by Teague and Campbell, J.J.).

the scope of warrantless inspections to the performance of any duty imposed by the code. The duties of the code are detecting code violations; violations are statutorily defined. One such violation is that no licensee may possess a narcotic on the premises. T.A.B.C. § 104.01(9).

We have upheld in the past the validity of the State's authority to search without warrant pursuant to the administrative search provision of Art. 666–13(d) V.A.P.C., the predecessor statute of T.A.B.C. § 101.04. *Clark v. State*, 445 S.W.2d 516 (Tex.Cr.App.1969). In *Crosby*, 750 S.W.2d at 777–78, however, this Court held that *Clark*, supra, does not stand for the proposition that police officers, searching and inspecting pursuant to T.A.B.C. § 101.04, have unbridled discretion to search without regard to the intended purpose of the statute.

■ Thus, we must turn to the facts of appellant's case to determine if the administrative search was implemented to effectuate the regulatory statute and whether the search was sufficiently narrow. The record reflects that the Tyler Police department received a tip from a reliable informant who stated that appellant was selling cocaine from behind the counter of his bar. The police entered appellant's bar during working hours, stayed only a short period of time and limited their search to the areas in which the informant stated cocaine could be found. Under the facts of this case, we find that the warrantless search of the licensed premises was a legitimate search pursuant to the code. The administrative search was implemented to further a duty of the T.A.B.C.; that is, to detect whether a licensee possessed a narcotic on the premises. T.A.B.C. § 104.01(9). The search was executed so that its scope was narrowly tailored to effectuate that duty. Therefore, the administrative search pursuant to T.A.B.C. § 101.04 did not violate appellant's rights under the Fourth and Fourteenth Amendments to the United States Constitution, nor did it violate his rights under Art. I, § 9 of the Texas Constitution.

The decision of the Court of Appeals is reversed. This cause is remanded to that Court for disposition of appellant's remaining points of error.

MILLER, J., concurs in the result.

CLINTON, J., dissents because neither the statute deals with nor was this search a "periodic inspection" within contemplation of *Burger* and its predecessors.

TEAGUE, J., not participating.